NO. 26-06847

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

IN RE MATTHEW MONSON; IN RE KATHERINE MONSON;
IN RE THE MONSON LAW FIRM, LLC; IN RE ALLIED TRUST INSURANCE COMPANY,
*Petitioners*.

---

On Petition for Writ of Mandamus from the United States Bankruptcy Court
for the Southern District of Texas, Houston Division,
Adversary Proceeding No. 26-03107

---

# PETITION FOR WRIT OF MANDAMUS

---

Ryan J. Richmond
STERNBERG, NACCARI & WHITE, LLC
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Tel.: (225) 412-3667
Fax: (225) 286-3046
ryan@snw.law

M. Suzanne Montero
Graham H. Williams
Johnston Burkhardt
STERNBERG, NACCARI & WHITE, LLC
935 Gravier Street, Suite 1800
New Orleans, LA 70112
Tel.: (504) 308-1395
Fax: (504) 534-8961
suzy@snw.law
graham@snw.law
johnston@snw.law

*Counsel for the Monson Defendants*

David Isaak
Allison Standish Miller
Evelyn M. Hudson
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
disaak@steptoe.com
amiller@steptoe.com
ehudson@steptoe.com

Shaundra M. Schudmak
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
sschudmak@lawla.com

*Counsel for Allied Trust Insurance Company*

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons or entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Petitioners | Counsel for Petitioners |
|---|---|
| Matthew Monson<br><br>Katherine Monson<br><br>The Monson Law Firm, LLC | Ryan J. Richmond<br>STERNBERG, NACCARI & WHITE, LLC<br>450 Laurel Street, Suite 1450<br>Baton Rouge, LA 70801<br>Tel.: (225) 412-3667<br>Fax: (225) 286-3046<br>ryan@snw.law<br><br>M. Suzanne Montero<br>Graham H. Williams<br>Johnston Burkhardt<br>STERNBERG, NACCARI & WHITE, LLC<br>935 Gravier Street, Suite 1800<br>New Orleans, LA 70112<br>Tel.: (504) 308-1395<br>Fax: (504) 534-8961<br>suzy@snw.law<br>graham@snw.law<br>johnston@snw.law |
| Allied Trust Insurance Company | David Isaak<br>Allison Standish Miller<br>Evelyn Hudson<br>STEPTOE LLP<br>717 Texas Street, Suite 2800<br>Houston, Texas 77002<br>disaak@steptoe.com<br>amiller@steptoe.com<br>ehudson@steptoe.com<br><br>Shaundra M. Schudmak<br>LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD<br>601 Poydras Street, Suite 2775<br>New Orleans, Louisiana 70130<br>Telephone: (504) 568-1990 |

| | |
|---|---|
| | Facsimile: (504) 310-9195<br>sschudmak@lawla.com |
| **Respondent** | **Counsel for Respondent** |
| MMA Law Firm, PLLC | Miriam T. Goott<br>Johnie J. Patterson, II<br>WALKER & PATTERSON PC<br>4815 Dacoma Street<br>Houston, TX 77092<br>Tel.: (713) 956-5577<br>mgoott@walkerandpatterson.com<br>jjp@walkerandpatterson.com |
| **Nominal Respondent** | **Counsel for Nominal Respondent** |
| Judge Eduardo V. Rodriguez<br>Chief United States Bankruptcy Judge<br>515 Rusk Avenue<br>Houston, TX 77002 | N/A |

Respectfully submitted,

**/s/ Ryan J. Richmond**
Ryan J. Richmond
*Counsel of Record*

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ v

ISSUE PRESENTED ........ 1

INTRODUCTION ........ 2

FACTUAL BACKGROUND ........ 5

A. MMA's Louisiana Hurricane Practice and the Events Giving Rise to This Proceeding. ........ 5

B. The Parties, Evidence, and Witnesses Are Concentrated in or Near the EDLA. ........ 7

C. The Motion to Transfer and the Bankruptcy Court's Summary Denial. ........ 9

ARGUMENT ........ 11

I. THIS COURT HAS AUTHORITY TO ISSUE THE WRIT, AND THE GOVERNING MANDAMUS STANDARD IS SATISFIED. ........ 11

II. THE BANKRUPTCY COURT CLEARLY ABUSED ITS DISCRETION BY FAILING TO APPLY THE GOVERNING TRANSFER STANDARDS TO THIS PROCEEDING. ........ 12

A. *Morris Bart* Could Not Substitute for the Required Case-Specific Analysis. ........ 12

B. The Private-Interest Factors Overwhelmingly Favor the EDLA. ........ 14

1. Access to sources of proof. ........ 14

2. Compulsory process. ........ 15

3. Cost of attendance for willing witnesses. ........ 16

4. Practical problems. ........ 17

C. The Public-Interest Factors Favor the EDLA or Are Neutral. ........ 17

D. Section 1412 Independently Requires Transfer for the Convenience of the Parties. .................................................. 18

III. THE BANKRUPTCY COURT CLEARLY ERRED BY TREATING REMOTE APPEARANCE UNDER RULE 43 AS A SUBSTITUTE FOR SUBPOENA POWER UNDER RULE 45. ........................................................ 20

IV. PETITIONERS HAVE NO ADEQUATE ALTERNATIVE REMEDY, AND THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES. .......................................................................... 23

CONCLUSION AND RELIEF SOUGHT ...................................................................... 25

CERTIFICATE OF SERVICE .......................................................................... 27

# # #

**TABLE OF AUTHORITIES**

Page

**Cases**

*Campbell v. Williams*, 2015 WL 3657627 (S.D. Tex. June 12, 2015) ........ 21

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004) ........ 12

*Clear Glass Mobile Serv. v. Old Republic Sur. Co.*, 2017 U.S. Dist. LEXIS 232264 (S.D. Tex. Dec. 11, 2017) ........ 21

*Coblin v. Depuy Orthopaedics, Inc.*, 2024 U.S. Dist. LEXIS 57714, 2024 WL 1357571 (E.D. Ky. Mar. 29, 2024) ........ 23, 24, 25

*Franatovich v. Allied Tr. Ins. Co.*, 2023 WL 7005861 (E.D. La. Mar. 16, 2023) ........ 6

*In re Chamber of Com.*, 105 F.4th 297 (5th Cir. 2024) ........ 18

*In re Google, L.L.C.*, 58 F.4th 1379 (5th Cir. 2026) ........ 13, 19

*In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023) ........ 4, 12, 22, 23, 25, 26

*In re MMA Law Firm, PLLC*, 2026 WL 1862008 (La. 06/29/2026) ........ 6

*In re Planned Parenthood Fed'n of Am.*, Inc., 52 F.4th 625 (5th Cir. 2022) ........ 13

*In re Princo Corp.*, 478 F.3d 1345 (Fed. Cir. 2007) ........ 11

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ........ 15

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) ........ 5, 25

*In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023) ........ 5, 18, 19, 20

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ... 5, 12, 15, 16, 18, 25, 26

*In re Zachry Holdings, Inc.*, 2025 WL 3056951 (Bankr. S.D. Tex. Oct. 31, 2025) ........ 20

*MMA Law Firm, PLLC v. Morris Bart, LLC,* 2026 WL 184214 (S.D. Tex. Jan. 23, 2026) ........ 6

*Pabtex, Inc. v. M/V ARUNA CENGIZ*, 2025 WL 517740 (S.D. Tx. Feb. 18, 2025) ........ 20

*Qualls v. Prewett Enters., Inc.*, 594 F.Supp.3d 813 (S.D. Tex. 2022) ........ 18

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ........ 12

*Stenberg v. Groff*, 2025 U.S. Dist. LEXIS 279511 (E.D. Mich. Aug. 26, 2025) ........ 27

## Statutes

28 U.S.C. § 1404 ........ 3, 4, 9, 10, 11, 12, 13, 24
28 U.S.C. § 1412 ........ 3, 9, 10, 12, 18, 19, 24
28 U.S.C. § 151 ........ 5, 11
28 U.S.C. § 158 ........ 5, 11, 23
28 U.S.C. § 1651 ........ 4, 11
28 U.S.C. § 292 ........ 24
28 U.S.C. § 455 ........ 24
42 U.S.C. § 1983 ........ 6, 17

## Rules

FED R. CIV. P. 43 ........ 4, 20, 21, 22, 23
FED R. CIV. P. 45 ........ 4, 9, 10, 15, 20, 21, 22, 23
FED. R. BANKR. P. 9016 ........ 20

###

## ISSUE PRESENTED

1. Did the Bankruptcy Court clearly abuse its discretion by denying Petitioners' motion to transfer this non-core adversary proceeding to the Eastern District of Louisiana in the absence of any relevant presence, evidence, or connection to the Southern District of Texas other than Respondent's chapter 11 bankruptcy?

###

## INTRODUCTION[1]

This adversary proceeding is a Louisiana dispute in every meaningful respect. MMA Law Firm, PLLC ("MMA") alleges that Matthew Monson, Katherine Monson, and The Monson Law Firm, LLC (collectively, the "Monson Defendants"), together with other defendants, orchestrated a multiyear campaign to destroy MMA's Louisiana hurricane-litigation practice. According to MMA's own complaint, the alleged campaign operated through Louisiana courts, Louisiana regulators, Louisiana disciplinary authorities, Louisiana law-enforcement agencies, Louisiana lawyers, and communications concerning thousands of Louisiana homeowners. The alleged conduct occurred overwhelmingly in Louisiana, most of the parties are located in or closer to the Eastern District of Louisiana ("EDLA"), most of the material nonparty witnesses reside or work there, and only the EDLA can compel many of those witnesses to attend trial. [A.P. Dkt. 28]

The Monson Defendants and Allied Trust Insurance Company ("Allied" and together with the Monson Defendants, collectively, "Petitioners") therefore moved promptly to transfer the proceeding to the EDLA under 28 U.S.C. §§ 1404(a) and 1412. The Petitioners identified the governing factors, tied those factors to MMA's pleaded claims, identified numerous material nonparty witnesses, and submitted declarations from two witnesses who will not appear without a valid and enforceable subpoena. [R.0191-R.0222.] MMA did not dispute any facts, including the locations of

[1] A.P. Dkt. refers to the document number for the referenced pleading docketed in underlying adversary proceeding *MMA Law Firm, PLLC v. Matthew Monson, et al.*, Case No. 24-31596 (Bankr. S.D. Tex.). R. refers to the document page number for the record attached in the Appendix to this Writ.

those witnesses or contend that the Southern District of Texas ("SDTX") could compel them to attend trial. Instead, MMA invoked a prior venue ruling involving different claims and parties, suggested that witnesses could appear remotely, and speculated that MMA could not receive a fair trial in the EDLA. [R.0233-R.0252.]

The Bankruptcy Court denied the motion summarily and without a hearing. Its three-page order did not analyze a single private- or public-interest factor under 28 U.S.C. § 1404(a), did not separately analyze 28 U.S.C. § 1412, and did not address the parties' evidence. It instead declared that the factors had not changed since the court's ruling in a different adversary proceeding[2] and faulted the movants for failing to address "remote attendance" or demonstrate the necessity of "a single witness." [R.0118-R.0187] That abbreviated reasoning was clear error for three independent reasons.

*First*, venue analysis is case-specific. The prior proceeding, *MMA Law Firm, PLLC v. Morris Bart, LLC*, involved different parties, different witnesses, and claims arising under the Bankruptcy Code. This proceeding asserts non-core RICO, § 1983, and state-law tort claims arising from an alleged Louisiana-centered conspiracy. The Bankruptcy Court could not replace the required analysis with the assertion that "the factors have not changed."

[2] The Bankruptcy Court referred to an unpublished October 18, 2024 ruling on a Motion to Transfer in an adversary proceeding entitled *MMA Law Firm, PLLC v. Morris Bart, LLC*, TXSB Case No. 24-3127. The ruling was attached to MMA's Response to Petitioners' Motion to Transfer and is contained in the record at R.0239-R.0251.

*Second*, the undisputed record establishes that the EDLA is clearly more convenient under § 1404(a). The principal sources of proof, the overwhelming majority of identified nonparty witnesses, the forum with compulsory process, the least costly forum for witness attendance, and the locus of the events and localized interests all point to the EDLA. The remaining factors are neutral. No factor favors the SDTX. The same facts independently satisfy § 1412's disjunctive standard because transfer is warranted "for the convenience of the parties," regardless of whether the separate interest-of-justice factors also favor transfer.

*Third*, remote testimony does not cure the SDTX's lack of subpoena power. FED R. CIV. P. 43(a) governs the manner in which testimony may be presented after a court has authority to compel the witness. FED R. CIV. P. 45(c) defines that authority and ordinarily limits a trial subpoena to a place within 100 miles of where the witness lives, works, or regularly transacts business in person. The Ninth Circuit issued mandamus to a bankruptcy court for committing the same legal error: "Rule 45(c) governs the court's power to require a witness to testify at trial, and Rule 43(a) governs the mechanics of how trial testimony is presented." *In re Kirkland*, 75 F.4th 1030, 1043 (9th Cir. 2023). A court's discretion to permit contemporaneous transmission under Rule 43 cannot enlarge its power to compel attendance under Rule 45.

Mandamus is warranted.[3] The All Writs Act authorizes a superior court to issue writs to courts within its appellate jurisdiction, 28 U.S.C. § 1651(a), and

[3] Allied filed a Motion to Withdraw the Reference on June 12, 2026, and it was fully briefed as of June 18, 2026. A.P. Dkt. 17, 19, 21. The Monson Defendants filed a Motion to Withdraw the Reference on

bankruptcy courts "constitute a unit of the district court." 28 U.S.C. § 151. This Court possesses appellate jurisdiction over the Bankruptcy Court under 28 U.S.C. § 158(a). And the Fifth Circuit has repeatedly recognized that mandamus is the appropriate means to correct an erroneous denial of transfer because an appeal after final judgment cannot undo the cost and inconvenience of litigating in the wrong forum. *In re TikTok, Inc.*, 85 F.4th 352, 366-67 (5th Cir. 2023); *In re Rolls Royce Corp.*, 775 F.3d 671, 676-77 (5th Cir. 2014); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318-19 (5th Cir. 2008) (en banc). The Court should issue the writ and direct the Bankruptcy Court to transfer this adversary proceeding to the United States Bankruptcy Court for the Eastern District of Louisiana.

## FACTUAL BACKGROUND

### A. MMA's Louisiana Hurricane Practice and the Events Giving Rise to This Proceeding.

Louisiana suffered catastrophic damage from Hurricanes Laura, Delta, and Ida in 2020 and 2021. The storms damaged hundreds of thousands of structures and resulted in an extraordinary volume of insurance litigation. [A.P. Dkt. 28 at ¶¶15-16.] MMA began marketing legal services to Louisiana property owners and, by its own account, built a statewide hurricane docket exceeding 11,000 clients. Hurricane Ida cases centered in the EDLA comprised MMA's largest docket. [A.P. Dkt. 28 at ¶¶51-54.]

June 22, 2026, and it was fully briefed as of July 8, 2026. A.P. Dkt. 22, 25, 29. Both motions remain pending. This Writ was filed as there is no district court case number assigned to this adversary proceeding, and no mechanism for appeal.

MMA's handling of that docket produced investigations, disciplinary proceedings, and judicial rulings in Louisiana. In the EDLA, Magistrate Judge Michael B. North conducted hearings concerning MMA's solicitation and representation practices. *See Franatovich v. Allied Tr. Ins. Co.*, 2023 WL 7005861, at *16-17 (E.D. La. Mar. 16, 2023). Other Louisiana-based institutions—including the United States District Court for the Western District of Louisiana, the United States District Court for the Middle District of Louisiana, the Louisiana Supreme Court, Louisiana Department of Insurance ("LDI"), the Louisiana Office of Disciplinary Counsel ("ODC"), the Louisiana State Police, and the New Orleans office of the Federal Bureau of Investigation—also investigated or received information concerning MMA. *See e.g.* A.P. Dkt. 28; *see also*, *MMA Law Firm, PLLC v. Morris Bart, LLC,* 2026 WL 184214, at *2 (S.D. Tex. Jan. 23, 2026); *In re MMA Law Firm, PLLC*, 2026 WL 1862008 (La. 06/29/2026). The resulting fallout included the withdrawal of MMA's Louisiana-licensed attorneys from its hurricane cases and proceedings concerning MMA's asserted rights to fees.

MMA filed its chapter 11 case in the SDTX on April 9, 2024. [R.0010-R.0187.] It later commenced this adversary proceeding and filed a Second Amended Complaint against the Petitioners, James J. Donelon III, the former Louisiana Commissioner of Insurance, and James David Caldwell, Jr., the former executive counsel for the LDI. [R.0001-R.0009.] MMA asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. § 1983, together with state-law

claims for tortious interference with existing and prospective business relations, defamation, and business disparagement. [A.P. Dkt. 28 at ¶¶376-667.]

The complaint alleges that the defendants conducted a "coordinated, multi-year campaign" to destroy MMA's Louisiana hurricane-litigation practice by using Louisiana "regulatory, disciplinary, and judicial machinery." [A.P. Dkt. 28 at 1-2.] MMA bases those claims on alleged communications and interactions with Louisiana attorneys (A.P. Dkt. 28 at ¶¶59-61, 322-343, 607), Louisiana federal judges (A.P. Dkt. 28 at ¶¶191-193, 225-260), the LDI (A.P. Dkt. 28 at ¶¶73-129, 329), the ODC (A.P. Dkt. 28 at ¶¶132-160), the Louisiana State Police (A.P. Dkt. 28 at ¶¶114-117, 261-269), the FBI's New Orleans office (A.P. Dkt. 28 at ¶¶270-275), and Louisiana legislators (A.P. Dkt. 28 at ¶¶296-298). Its principal damages theory seeks the value of its former Louisiana practice, including contingent-fee interests in approximately 11,000 Louisiana hurricane cases. [A.P. Dkt. 28 at 98-99.]

**B. The Parties, Evidence, and Witnesses Are Concentrated in or Near the EDLA.**

The parties' locations favor the EDLA. MMA is the only party located in the SDTX. Matthew Monson, Katherine Monson, The Monson Law Firm, and Donelon are located in the EDLA. Caldwell and Allied are located in Florida, closer to New Orleans than Houston. [A.P. Dkt. 28 at ¶¶8-14.[4]]

[4] In the Second Amended Complaint, A.P. Dkt. 28 at ¶12, MMA alleges Allied can be served through its registered agent in Texas. However, Allied is a Florida-based company, with its principal place of business in Florida. [R.0198.] MMA does not dispute this. [R.0223-R.0238.] *See also*, NAIC Consumer Insurance Search Results for Allied Trust Insurance Company, https://content.naic.org/cis_consumer_information.htm, last accessed August 18, 2026.

The sources of proof are likewise concentrated in Louisiana. The Monson Defendants' and Donelon's records are in the EDLA. Relevant nonparty records are maintained by Louisiana lawyers and law firms, the LDI, the ODC, the Louisiana State Police, the FBI's New Orleans office, Louisiana successor counsel, and courts that presided over the hurricane cases and related proceedings. [A.P. Dkt. 28.] MMA also seeks to prove the value of thousands of Louisiana hurricane matters through the underlying case files, client relationships, property-damage records, settlement information, and testimony concerning whether MMA represented—or probably would have represented—the affected homeowners. [A.P. Dkt. 28.]

The motion identified numerous material nonparty witnesses in or within 100 miles of the EDLA, including:

1. Nicholas Arnold, a New Orleans insurance-defense attorney whom MMA alleges proposed an early resolution of 149 Allied matters and whose proposal forms part of MMA's liability theory;

2. Judge North, whose alleged communications with Monson are repeatedly pleaded as acts in furtherance of the alleged conspiracy;

3. LDI representatives Thomas Travis and Nathan Strebeck, who possess knowledge of the LDI's investigation and Monson's alleged communications with the agency;

4. ODC representatives with knowledge of bar complaints and disciplinary investigations that MMA alleges furthered the conspiracy;

5. Louisiana State Police investigator Daniel Graff and FBI Special Agent Krista Bradford, whose alleged communications with Monson are pleaded as actionable conduct;

6. Morris Bart attorney Austin Marks and other Louisiana lawyers who allegedly communicated with Monson or declined engagements with MMA;

7. Holly Caffarel and other Louisiana homeowners whose relationship—or lack of a relationship—with MMA bears directly on MMA's tortious-interference theories; and

8. Louisiana homeowners whom MMA allegedly represented, or prospectively would have represented, and whose testimony bears on the existence and value of MMA's asserted contracts and business expectancies.

[R.0200-R.0203.]

Two named witnesses supplied declarations addressing compulsory process. Arnold and Strebeck each stated that he would not appear to testify unless properly served with a valid and enforceable subpoena. [R.0218-R.0219 and R.0221-R.0222.] Arnold resides in the EDLA, and Strebeck resides within 100 miles of the EDLA courthouse. The SDTX cannot issue a trial subpoena compelling either witness to appear in Houston—the EDLA can. FED. R. CIV. P. 45(c)(1)(A).

### C. The Motion to Transfer and the Bankruptcy Court's Summary Denial.

Before filing their first responsive pleadings, the Petitioners jointly moved to transfer this adversary proceeding to the EDLA under 28 U.S.C. §§ 1404(a) and 1412. [R.0191-R.0222.] Under § 1404(a), they showed that all four private-interest factors favor the EDLA, the EDLA's local interest favors transfer, and the remaining public-interest factors are neutral. Under § 1412, they showed that each convenience factor favors transfer. [R.0204-R.0214.]

MMA opposed transfer principally on four grounds. It relied on the Bankruptcy Court's earlier denial of transfer in the *Morris Bart* adversary proceeding, invoked the Debtor's interest in litigating in its bankruptcy forum, suggested that Louisiana witnesses could participate remotely, and claimed that the EDLA could not provide a

fair forum because some of its judicial officers are referenced in MMA's allegations or may be witnesses. [R.0223-R.0252.]

The Petitioners replied that *Morris Bart* involved core claims and a materially different record, § 1412's text is disjunctive, MMA had analyzed interest-of-justice considerations that do not control the § 1404(a) inquiry, the locations of the parties, proof, and witnesses were not genuinely disputed, remote attendance could neither be compelled beyond Rule 45(c)'s geographical limits nor substitute for live testimony, and adverse rulings do not overcome the presumption that federal judges are impartial or the statutory procedures for recusal and judicial assignment. [R.0253-R.0330.]

The Bankruptcy Court denied the motion on August 4, 2026 without a hearing. [R.0188-0190.] The order devoted approximately one page to the parties' positions and approximately one page to background allegations from the complaint. Its entire analysis stated:

> Two years ago, this Court applied the interest of justice and convenience factors to a motion seeking transfer of an MMA adversary proceeding to the Eastern District of Louisiana and denied it. The factors have not changed. What has changed is that the movants are now asking this Court to send the case to a district whose judicial officers they have identified as their own witnesses, and they have done so without addressing remote attendance and without demonstrating the necessity of a single witness.

[R.0189.] The order then denied the motion "[a]ccordingly, and without the need of a hearing." [R.0189-R.0190.] It did not identify or weigh the § 1404(a) factors, did not analyze § 1412's disjunctive text or convenience factors, did not address the Arnold and Strebeck declarations, and did not distinguish between the power to permit

remote testimony under Rule 43 and the power to compel testimony under Rule 45. [R.0188-R.0190.] This petition followed.

## ARGUMENT

### I. THIS COURT HAS AUTHORITY TO ISSUE THE WRIT, AND THE GOVERNING MANDAMUS STANDARD IS SATISFIED.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). That authority extends to matters within a court's appellate jurisdiction even when no appeal has been perfected. *In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007) (citing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943)). A bankruptcy court "constitute[s] a unit of the district court," 28 U.S.C. § 151, and this Court possesses appellate jurisdiction over the Bankruptcy Court's final orders and, with leave, its interlocutory orders. 28 U.S.C. § 158(a). A district court may issue a writ directly to a bankruptcy court within its appellate jurisdiction. *See Kirkland*, 75 F.4th at 1040 (recognizing that writs can be issued to the bankruptcy court because they are within the circuit court's appellate jurisdiction).

Mandamus is extraordinary, but "there can be no doubt" that it is an appropriate means to challenge an erroneous § 1404(a) ruling. *Volkswagen*, 545 F.3d at 309. The petitioner must establish (1) a clear and indisputable right to the writ, (2) no other adequate means to obtain the desired relief, and (3) that issuance of the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004). A clear abuse of discretion establishes the required clear and indisputable right. *Volkswagen*, 545 F.3d at 311-12.

Each requirement is met. The Bankruptcy Court committed legal error by substituting a prior, factually distinct venue ruling for the required case-specific analysis; disregarding the undisputed evidence bearing on §§ 1404(a) and 1412, and treating remote appearance as an answer to limitations on compulsory process. The Petitioners have no adequate remedy after final judgment because the costs and burdens of litigating in an inconvenient forum cannot be undone. And the writ is appropriate because the record leaves no permissible basis to retain a Louisiana-centered dispute in Houston.

## II. THE BANKRUPTCY COURT CLEARLY ABUSED ITS DISCRETION BY FAILING TO APPLY THE GOVERNING TRANSFER STANDARDS TO THIS PROCEEDING.

### A. *Morris Bart* Could Not Substitute for the Required Case-Specific Analysis.

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice" to a district where the action might have been brought. 28 U.S.C. § 1404(a). The movant must show good cause by demonstrating that the proposed forum is "clearly more convenient" than the plaintiff's chosen forum. *In re Google, L.L.C.*, 58 F.4th 1379, 1382 (5th Cir. 2026). Courts make that determination by weighing four private-interest factors and four public-interest factors. *In re Planned Parenthood Fed'n of Am.*, Inc., 52 F.4th 625, 630 (5th Cir. 2022). The inquiry necessarily turns on the facts of the particular claims, evidence, witnesses, and forums.

The Bankruptcy Court did not perform that inquiry. It identified none of the eight § 1404(a) factors and weighed none of the evidence. It instead treated *Morris*

*Bart* as controlling because, in its view, "[t]he factors have not changed." [R.0189.] That premise is demonstrably incorrect.

*Morris Bart* involved two principal parties—MMA in Houston and Morris Bart in Louisiana—and asserted automatic-stay, property-of-the-estate, and turnover claims arising under the Bankruptcy Code. [R.0240-R.0241.] In contrast, this proceeding involves seven parties, only one of which is in Houston; four are in the EDLA and two are in Florida. It asserts non-core federal and state-law claims existing independently of the Bankruptcy Code. The alleged conspiracy implicates Louisiana judges, lawyers, regulators, disciplinary authorities, investigators, and homeowners who were not part of the operative facts in *Morris Bart*. [A.P. Dkt. 28.]

The witness record is also different. The Bankruptcy Court ruling erroneously contends that Petitioners identified the judicial officers as their own witnesses. [R.0189.] In fact, the motion identified named witnesses, described their anticipated testimony by reference to MMA's own allegations, established their locations, and submitted two declarations confirming that compulsory process will be necessary. [R. 0200-R.0203.] The witnesses at issue were identified by MMA as integral to MMA's claims. [A.P. Dkt. 28.] The Bankruptcy Court could not transplant a finding that witnesses were unnecessary in *Morris Bart* to this materially different complaint and record.

Nor could the Bankruptcy Court treat MMA's forum choice as a freestanding reason to deny transfer under § 1404(a). The "clearly more convenient" standard already accounts for the plaintiff's choice, which "is not an independent factor" in the

analysis. *Volkswagen*, 545 F.3d at 314 n.10. Counting that choice again—whether as a "home-court presumption," the economics of administering the estate, or MMA's original forum selection—would impermissibly distort the governing balance.

The absence of a hearing is not, standing alone, the asserted error. The error is that the order's summary reasoning did not apply the governing law to the undisputed evidence presented. While a court has discretion in administering its docket, it does not have discretion to dispense with the statutory analysis or treat materially different proceedings as interchangeable.

**B. The Private-Interest Factors Overwhelmingly Favor the EDLA.**

The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. Every factor favors transfer.

**1. Access to sources of proof.**

This factor asks about relative, not absolute, ease of access. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Electronic access may reduce inconvenience, but it does not make the location of evidence irrelevant or render the factor "superfluous." *Volkswagen*, 545 F.3d at 316.

Most relevant proof is in Louisiana. The Monson Defendants and Donelon are in the EDLA, as are their records. The complaint places at issue records held by Louisiana lawyers and law firms, the LDI, the ODC, the Louisiana State Police, the New Orleans FBI office, and Louisiana courts and successor counsel. It also places at

issue the existence and value of MMA's alleged relationships with thousands of Louisiana homeowners and the underlying Louisiana hurricane matters. [A.P. Dkt. 28.] MMA's assertion that some communications already have been produced in Houston addresses absolute access to a subset of documents; it does not change the relative concentration of proof. Moreover, MMA's own records in Texas appear to be incomplete. As a former MMA attorney testified, "there were significant problems at intake, significant problems with data entry, significant problems across the board." [R.0272]. Thus, the witnesses are necessary to Petitioners' right to test the accuracy of MMA's documentation with the original sources that originate in Louisiana. The first factor favors the EDLA.

**2. Compulsory process.**

This factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 316. Rule 45 ordinarily permits a subpoena to command attendance at trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). New Orleans is approximately 350 miles from Houston.[5]

The EDLA, but not the SDTX, can compel numerous material nonparty witnesses. Arnold, Judge North, Bradford, Marks, Caffarel, and other witnesses reside or work in the EDLA. Travis, Strebeck, Graff, and representatives of the LDI, ODC, and Louisiana State Police are located in Baton Rouge, within 100 miles of New

[5] This court can take judicial notice of the geographic fact that the distance between New Orleans and Houston is approximately 350 miles.

Orleans but not Houston. [R.0200-R.0203.] Arnold and Strebeck averred that they will not attend absent a valid and enforceable subpoena. [R.0218-R.0219 and R.0221-0222] The order did not address those declarations.

The witnesses are material because MMA made them so. MMA pleads Arnold's settlement proposal, Monson's alleged communications with Judge North and Louisiana officials, the investigations and proceedings conducted by Louisiana agencies, and the existence of contracts or prospective relationships with Louisiana homeowners as acts, evidence, or elements of its claims. [A.P. Dkt. 28.] At the pleading stage, before discovery, the movants were not required to name every homeowner among thousands whose alleged representation forms MMA's damages theory. The named witnesses and identified categories are more than sufficient to show a genuine compulsory-process problem. This factor weighs heavily for transfer.

**3. Cost of attendance for willing witnesses.**

The cost-of-attendance factor is often the most important private-interest factor. *See Qualls v. Prewett Enters., Inc.*, 594 F.Supp.3d 813, 824 (S.D. Tex. 2022). When witnesses must travel more than 100 miles, inconvenience increases with distance because additional travel entails additional time, expense, and absence from work and family. *TikTok*, 85 F.4th at 361; *Volkswagen*, 545 F.3d at 317.

Most identified witnesses reside in the EDLA or substantially closer to New Orleans than Houston. The Louisiana officials and institutional witnesses are in New Orleans or Baton Rouge (within 100 miles of EDLA); the homeowners and Louisiana lawyers are concentrated in the region affected by Hurricane Ida (within 100 miles of EDLA); and four defendants are in the EDLA. [R.0200-R.0203.] MMA identified no

comparable roster of material nonparty witnesses in Houston. [R.0223-R.0237.] The convenience of MMA's counsel is irrelevant. *In re Chamber of Com.*, 105 F.4th 297, 305 (5th Cir. 2024). The third factor favors transfer.

**4. Practical problems.**

The EDLA has extensive familiarity with Hurricane Ida litigation and the proceedings that MMA itself makes part of its claims. The underlying witnesses, institutions, case files, and alleged acts are concentrated in or near that district. Trying the case there will make presentation of evidence easier, less expensive, and more reliable.

MMA argued that the Bankruptcy Court's administration of the chapter 11 case and its adjudication of a Rule 2004 dispute favor Houston. But resolving a pre-suit discovery dispute does not give the Bankruptcy Court comparable familiarity with the merits of MMA's RICO, § 1983, and tort claims. Nor does it outweigh the EDLA's connection to the events, evidence, and witnesses. The fourth factor favors transfer.

**C. The Public-Interest Factors Favor the EDLA or Are Neutral.**

The public-interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Google*, 58 F.4th at 1382.

The local-interest factor strongly favors the EDLA. Courts focus on the events giving rise to the suit, not merely the parties' connections to a forum; "the place of the

alleged wrong" is especially important. *TikTok*, 85 F.4th at 364. MMA alleges a campaign to destroy a Louisiana law practice through Louisiana courts, agencies, disciplinary bodies, law enforcement, lawyers, and homeowners. The communications, investigations, proceedings, client relationships, and alleged interference occurred overwhelmingly in Louisiana and predominantly in the EDLA. [A.P. Dkt. 28.] The fact that MMA is organized in Texas and later entered bankruptcy here does not give Houston a comparable interest in those events.

The remaining public factors are neutral. Both districts can apply federal law and any governing state law, and no exceptionally arcane issue has been identified. *TikTok*, 85 F.4th at 365. Transfer creates no conflict-of-laws or foreign-law problem that does not already exist. *See also Pabtex, Inc. v. M/V ARUNA CENGIZ*, 2025 WL 517740, at *7 (S.D. Tx. Feb. 18, 2025) (finding factors neutral as both districts "are equally capable of addressing any conflict of law or foreign law issues that may arise.")

Thus, all four private-interest factors favor transfer, the most relevant public-interest factor strongly favors transfer, and the other three factors are neutral. No factor favors the SDTX. On that record, the EDLA is clearly more convenient.

### D. Section 1412 Independently Requires Transfer for the Convenience of the Parties.

Section 1412 permits transfer of a case or proceeding under title 11 "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The statute is disjunctive; a movant need show either that transfer serves the interest of justice

*or* that it serves the convenience of the parties. *In re Zachry Holdings, Inc.*, 2025 WL 3056951, at *6 (Bankr. S.D. Tex. Oct. 31, 2025).

Courts consider the following factors when determining whether transfer is warranted for the convenience of the parties: (1) the location of the plaintiff and defendant; (2) the ease of access to necessary proof; (3) the convenience of witnesses; (4) the availability of subpoena power for the unwilling witnesses; and (5) the expense related to obtaining witnesses. *Clear Glass Mobile Serv. v. Old Republic Sur. Co.*, 2017 U.S. Dist. LEXIS 232264, at *10 (S.D. Tex. Dec. 11, 2017) (citing *Campbell v. Williams*, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015) (Hanen, J.)). They all point toward the EDLA. Only MMA is in Houston; four defendants are in the EDLA and two are closer to New Orleans. Most proof and witnesses are in or near the EDLA. Only the EDLA can compel key nonparty witnesses, and trying the case there will substantially reduce witness expense.[6]

MMA's interest-of-justice arguments could not defeat that independent showing. Its reliance on estate administration, a home-court presumption, and its forum choice addresses only one side of the statute. Once the movants established convenience, § 1412's alternative requirement was satisfied. The order did not acknowledge the statute's disjunctive language or analyze the convenience factors. That failure supplies an independent basis for mandamus.

[6] Petitioners discuss all of these factors in greater detail in their section 1404(a) analysis above and incorporate by reference that discussion here.

### III. The Bankruptcy Court Clearly Erred by Treating Remote Appearance Under Rule 43 as a Substitute for Subpoena Power Under Rule 45.

The order's only response to the motion's witness showing was that the movants had not addressed "remote attendance." [R.0189.] But authority to permit remote testimony and power to compel a witness to testify are different questions governed by different rules.

Rule 43(a) establishes the ordinary mode of trial testimony: witnesses testify in open court. A court may permit contemporaneous transmission from another location only "[f]or good cause in compelling circumstances and with appropriate safeguards." FED. R. CIV. P. 43(a). The exception is narrow. Its advisory committee note emphasizes the importance of face-to-face testimony and explains that the strongest showings ordinarily involve unexpected circumstances such as accident or illness. *Kirkland*, 75 F.4th at 1047.

Rule 45 addresses a logically antecedent question: whether the court can require the witness to testify. A subpoena may ordinarily command attendance at a trial only within 100 miles of where the witness resides, works, or regularly transacts business in person. FED. R. CIV. P. 45(c)(1)(A). A subpoena exceeding Rule 45(c)'s geographical limitations must be quashed or modified. FED. R. CIV. P. 45(d)(3)(A)(ii). Rule 45 applies in bankruptcy proceedings through FED. R. BANKR. P. 9016. *Kirkland*, 75 F.4th at 1043 n.3.

*Kirkland* squarely rejects the proposition implicit in the order. There, a bankruptcy court recognized that witnesses living in the Virgin Islands could not be compelled to attend a California trial in person, but ordered them to testify remotely

after finding good cause and compelling circumstances under Rule 43(a). *Id*. at 1037-39. The Ninth Circuit granted mandamus. It held that Rule 45 governs the court's power, while Rule 43 governs only the mechanics of presenting testimony. *Id*. at 1043. Because power to compel must be determined first, Rule 43 cannot expand the geographical reach of Rule 45.

The text and advisory committee notes reinforce that holding. The note states that "the witness can be commanded to testify from any place described in Rule 45(c)(1)." FED. R. CIV. P. 45 advisory committee's note to 2013 amendment. As *Kirkland* explains, that language confirms that Rule 45's geographical limits continue to apply—it does not relocate the trial to the witness's home or transform remote access into nationwide subpoena power. 75 F.4th at 1043-45. Otherwise, nearly every person in the country could be compelled to testify at any federal trial merely by appearing from an internet-connected location near home, effectively nullifying Rule 45(c) and the mandatory quash provision in Rule 45(d)(3)(A)(ii). *Id*. at 1044.

*Coblin v. Depuy Orthopaedics, Inc.*, 2024 U.S. Dist. LEXIS 57714, 2024 WL 1357571 (E.D. Ky. Mar. 29, 2024), and *FA ND Chev, LLC v. Kupper*, 2025 U.S. Dist. LEXIS 198694, 2025 WL 2829215 (D. N.D. Oct. 6, 2025), reached the same conclusion. *Coblin* denied a request to compel remote trial testimony from witnesses beyond 100 miles, holding that Rule 43 becomes relevant only after the witness is properly subject to subpoena under Rule 45. 2024 WL 1357571, at *6. *Kupper* likewise quashed a subpoena seeking remote testimony from Texas in a North Dakota proceeding,

holding that the practical ease of video testimony cannot expand the issuing court's power. 2025 WL 2829215, at *11.

That distinction is dispositive here. General Order 2021-05 may allow parties to stipulate to remote attendance, but the Petitioners do not stipulate to remote trial testimony. [R.0263.] And voluntary appearance is no answer to the compulsory-process factor. Arnold and Strebeck stated that they will appear only in response to a valid and enforceable subpoena. [R.0218-R.0219 and R.0221-R.0222.] The SDTX cannot compel them—or the other Louisiana nonparty witnesses beyond Rule 45(c)'s limits—to testify in this proceeding merely by offering Zoom or another video platform.

Remote testimony also does not eliminate witness inconvenience. MMA's claims turn on intent, credibility, alleged oral and written communications, and the existence or nonexistence of attorney-client relationships. The factfinder's ability to assess demeanor and observe full body language in person is particularly important. Rule 43 embodies that preference, and inconvenience that was foreseeable from the outset ordinarily does not establish compelling circumstances. The EDLA can offer both compulsory process and live testimony; the SDTX cannot.

The Bankruptcy Court's reliance on "remote attendance" therefore rested on a legal premise rejected by *Kirkland*, *Coblin*, and *Kupper*. And neither the Bankruptcy Court nor Respondent have cited to any contrary authority. By allowing the possibility of remote transmission to erase the distinction between permission and

compulsion, the order stretched federal subpoena power beyond Rule 45's text. That is clear legal error and independently warrants mandamus.

### IV. PETITIONERS HAVE NO ADEQUATE ALTERNATIVE REMEDY, AND THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES.

An appeal after final judgment cannot remedy an erroneous refusal to transfer. A litigant generally cannot show that it would have prevailed had trial occurred in the proper forum, and the inconvenience imposed on parties and witnesses "will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *Volkswagen*, 545 F.3d at 319. For that reason, "[o]ther means for review are unavailable" in the practical sense relevant to venue, and mandamus is the established mechanism for review. *Rolls Royce*, 775 F.3d at 676.

Section 158(a)(3) permits this Court, in its discretion, to grant leave to appeal an interlocutory bankruptcy order, but it does not provide an appeal as of right or cure the venue injury after trial. *Kirkland* recognized the additional interlocutory avenues available in bankruptcy cases and nevertheless held that the absence of ordinary review and the irreparable nature of the procedural injury supported mandamus where the bankruptcy court misapplied Rules 43 and 45. *Kirkland*, 75 F.4th 1030. The same practical concern applies to venue: once the parties conduct discovery and trial in a forum lacking compulsory process over material witnesses, the harm cannot be unwound.

Issuance of the writ is also appropriate. Mandamus is supervisory in nature and particularly appropriate when the lower court has disregarded settled transfer

principles or misapplied a federal procedural rule in a manner likely to recur. *Volkswagen*, 545 F.3d at 319; *Kirkland*, 75 F.4th at 1051. The order here did both. It failed to conduct the case-specific balancing required by §§ 1404(a) and 1412, and it treated remote attendance as a solution to a limitation on subpoena power.

Nor is a remand for further explanation necessary. The relevant and undisputed facts are established by MMA's own pleading, the parties' submissions, the witness declarations, and the undisputed geography. All four private-interest factors favor the EDLA; the local-interest factor strongly favors the EDLA; the remaining public factors are neutral; and no factor favors the SDTX. Section 1412's convenience factors independently point in the same direction. Where the record permits only one result, mandamus properly directs transfer.

MMA's speculation about the EDLA's impartiality does not change that conclusion. Federal judges are presumed impartial, and prior adverse rulings ordinarily do not establish bias. *Stenberg v. Groff*, 2025 U.S. Dist. LEXIS 279511, at *3 (E.D. Mich. Aug. 26, 2025). If assignment to a particular judge presents a genuine issue, 28 U.S.C. § 455 supplies the recusal framework. If extraordinary circumstances implicate the entire district, 28 U.S.C. § 292(b) permits assignment of another judge. MMA's concern about judicial bias is speculative at best and is not a venue factor. It cannot outweigh the undisputed evidence that the EDLA is the proper and clearly more convenient forum.

## CONCLUSION AND RELIEF SOUGHT

The Bankruptcy Court denied transfer without applying the governing factors, without addressing the material differences between this proceeding and *Morris Bart*, without confronting the undisputed witness evidence, and on the legally erroneous premise that remote attendance could answer the SDTX's lack of subpoena power. The record establishes a clear and indisputable right to transfer, no adequate post-judgment remedy, and circumstances making mandamus appropriate. Petitioners therefore respectfully request that this Court issue a writ of mandamus directing the United States Bankruptcy Court for the Southern District of Texas to transfer Adversary Proceeding No. 26-03107 to the United States Bankruptcy Court for the Eastern District of Louisiana.

DATED: August 18, 2026

Respectfully submitted,

**STERNBERG, NACCARI & WHITE, LLC**

By: **/s/ Ryan J. Richmond**
Ryan J. Richmond (TXBN 24086224)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Tel.: (225) 412-3667
Fax: (225) 286-3046
ryan@snw.law

AND

M. Suzanne Montero (La. Bar No. 21361)[7]
Graham H. Williams (La. Bar No. 36731)[8]
Johnston Burkhardt (La. Bar No. 38687)[9]

[7] Pro hac vice application granted in case no. 25-31596. (Bkr. Dkt. 1300)

[8] Pro hac vice motion in progress.

[9] Pro hac vice motion in progress.

935 Gravier Street, Suite 1800
New Orleans, LA 70112
Tel.: (504) 308-1395
Fax: (504) 534-8961
suzy@snw.law
graham@snw.law
johnston@snw.law

*Attorney for the Monson Defendants*

AND

*/s/ David Isaak*

David Isaak
Texas Bar No. 24012887
Allison Standish Miller
Texas Bar No. 24046440
Evelyn M. Hudson
Texas Bar No. 24145282
**STEPTOE LLP**
717 Texas Avenue, Suite 2800
Houston, TX 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320
disaak@steptoe.com
amiller@steptoe.com
ehudson@steptoe.com

*AND*

*/s/ Shaundra M. Schudmak*

Shaundra M. Schudmak
*TXSB Pro Hac Vice*
LA Bar #32007; GA Bar #713829
**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
Email: sschudmak@lawla.com

*Attorneys for Allied Trust Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on Tuesday, August 18, 2026, a true and correct copy of the foregoing petition was served via email on counsel for the Respondents.

**/s/ Ryan J. Richmond**
Ryan J. Richmond
*Counsel of Record*